IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAUREL GARDENS, LLC, *et al.*,

    Plaintiffs,

v.

TIMOTHY MCKENNA, *et al.*,

    Defendants.

CIVIL ACTION
NO. 17-570

**MEMORANDUM**

SCHMEHL, J.      JANUARY 17, 2020

    Plaintiff Charles Gaudioso first met and conducted business with Defendant Timothy McKenna in 2007 or 2008. (ECF Docket No. 281, Ex. 3 at ¶7.) In the intervening years, the relationship between Mr. Gaudioso and Mr. McKenna collapsed and become hostile. As a result, Mr. Gaudioso and his co-plaintiff companies[1] have now filed suit against Mr. McKenna and 32 other defendants, alleging that Mr. McKenna coordinated "a widespread criminal conspiracy that was engaged in a pattern of racketeering activity across state lines … [in violation of] the Racketeer Influenced and Corrupt Organizations Act ('RICO'), 18 U.S.C. §§1961-1968." (ECF Docket No. 286 at 1.)

    Among the 33 alleged participants in this RICO conspiracy are Norman and Robert Aerenson (collectively, "Aerenson Defendants"). The Aerenson Defendants own the Polly Drummond Shopping Center ("PDSC") in the state of Delaware. (ECF Docket No. 242 at 20.) In November 2013, as a Member of Rojan 586 Polly LLC, Robert Aerenson signed a contract

---

[1] The Plaintiffs in this matter are (1) Charles P. Gaudioso; (2) LGSM, GP; (3) Laurel Gardens Holdings, LLC; (4) American Winter Services, LLC; and (5) Laurel Gardens, LLC. (ECF Docket No. 43.)

1

with Plaintiff American Winter Services ("AWS") for snow removal services for the 2013-14 season at PDSC. (ECF Docket No. 299 at ¶4(d).) After submitting several invoices for this work to the Aerenson Defendants, AWS learned that Defendant Timothy McKenna had allegedly arranged "with [the Aerenson Defendants] for snow removal, salt, and landscaping services to be provided by the Plaintiffs for free in exchange for debt forgiveness of a personal loan to [Mr. McKenna]." (*Id.*)

This matter is now before this Court on the Aerenson Defendants' Motion for Summary Judgment. (ECF Docket No. 265.) Plaintiffs' claims stem from the alleged arrangement between McKenna and the Aerenson Defendants and associated allegations of racketeering. Now, the Aerenson Defendants have moved for summary judgment on all nine of Plaintiffs' claims against them.[2] For the reasons elaborated in this memorandum, summary judgment is granted in favor of the Aerenson Defendants on all claims.

## I. RELEVANT FACTUAL BACKGROUND

In November 2013, as a Member of Rojan 586 Polly LLC, Robert Aerenson signed a contract with Plaintiff AWS for snow removal services for the 2013-14 season at the Polly Drummond Shopping Center ("PDSC").[3] (ECF Docket No. 299 at ¶4(d).) After invoicing Robert Aerenson for work under this contract, AWS learned that Defendant Timothy McKenna

---

[2] As numbered in Plaintiffs' Amended Complaint, the claims against the Aerensons are:
I.   Aiding and Abetting Breach of Fiduciary Duty;
II.  Civil Conspiracy;
III. Civil RICO §1962(c);
IV.  Civil RICO §1962(b);
V.   Civil RICO §1962(d);
VI.  Fraud;
VIII. Conversion;
IX.  Negligent Misrepresentation; and
X.   Tortious Interference with Contract. (ECF Docket No. 43.)

[3] We note that this contract was produced on American Winter Services LLC letterhead and appears to have been produced by AWS. (ECF Docket No. 286, Ex. 2.) We further note that Defendant Michael McKenna appears to have signed the contract on behalf of AWS. (*Id.*)

2

(then Plaintiffs' employee) had arranged "with [Robert Aerenson] for snow removal, salt, and landscaping services to be provided by the Plaintiffs for free in exchange for debt forgiveness of a personal loan to [Mr. McKenna]." (*Id.*)

Plaintiffs discovered that Robert Aerenson had entered into a handwritten agreement with Timothy McKenna to relieve a $60,000.00 personal debt owed by McKenna to Robert Aerenson in exchange for McKenna providing goods and services, owned by Plaintiffs, at no cost. (*Id.* at ¶4(e).) As part of this deal, Aerenson paid McKenna an $18,000 personal check to reflect the excess value of the services provided over McKenna's personal debt. (*Id.* at ¶4(f).) The handwritten agreement also provided for free services to Robert Aerenson for the 2014-15 season. (*Id.* at ¶4(g).)

Plaintiffs allege that Timothy McKenna hid evidence of salt deliveries to Robert Aerenson. (*Id.* at ¶4(h).) In AWS's records, there are no listed salt deliveries to the PDSC; Plaintiffs believe that McKenna hid the deliveries among those made to other clients, namely Technivate, Inc. ("Technivate").[4] (*Id.*) Technivate also billed AWS for snow removal services performed at the PDSC at Timothy McKenna's direction. (*Id.*) For these services, Technivate only charged AWS the hourly rate for snow plowing and not for salt used. (*Id.*) Technivate used AWS's salt, which McKenna delivered to the PDSC without recording it as intended for the PDSC. (*Id.*)

Subsequently, Plaintiff Gaudioso attempted to collect payment from Robert Aerenson for this work; Aerenson refused to pay. (*Id.* at ¶4(i).) In the summer of 2014, after Plaintiffs had terminated Timothy McKenna's employment for cause, Plaintiffs discovered that his son, Michael McKenna, had directed Plaintiffs' assets and labor to complete landscaping on land in southern Delaware owned, in part, by Robert Aerenson. (*Id.* at ¶4(j).) Plaintiffs again attempted

---

[4] Technivate, Inc. is a former defendant in this action. (ECF Docket No. 43.)

to collect payment; Aerenson again refused to pay. (*Id.*) Plaintiff AWS sent Robert Aerenson an invoice—dated May 1, 2014—for $60,403.20. (ECF Docket No. 43, Ex. D.) Aerenson returned the invoice with a handwritten note reading "Paid in full—See Tim M." (*Id.*) Plaintiffs' employee, Laura Mohr, responded to Aerenson's note asking him to explain; Aerenson responded to that email, reiterating "See Tim!" (*Id.*)

On November 5, 2014, in attempt to resolve these issues, Plaintiffs and Defendant Timothy McKenna entered into a Settlement Agreement. (ECF Docket No. 286, Ex. 19.) The Settlement Agreement stated in relevant part:

> The Laurel Gardens Parties, for themselves, and all of their respective officers, directors, members, partners, agents, servants and employees, and all of their respective affiliated companies, heirs and legal representatives, do hereby remise, release and forever discharge Rojan 586 Polly LLC, Robert Aerenson, Norman Aerenson, Capson Millsboro LLC, Polly Drummond Shopping Center, and all of their heirs, executors, administrators, successors, or assigns, from and against any and all debts, sums, accounts, obligations, losses, costs, controversies, suits, actions, causes of action, liabilities, judgments, damages, expenses, claims, or demands, whether in law or equity, asserted or un-asserted, expressed or implied, foreseen or unforeseen, known or unknown, liquidated or non-liquidated, of any kind, nature or description whatsoever, and out .of whatever transactions arising, which the Laurel Gardens Parties ever had, now has or hereafter may have against McKenna or any of the above named parties, from the beginning of time to the date of execution of this Agreement.

(*Id.* at ¶4.)

The Settlement Agreement also included a covenant not to sue, which stated that:

> "[t]he parties hereto agree that they shall not now or in the future commence any suit or initiate any claim against the other based upon any matter that occurred prior to the date of this Agreement other than to enforce the terms of this Agreement. This covenant not to sue is a material term and inducement to entering into this Agreement."

(*Id.* at ¶11.)

All parties agree that Plaintiffs' allegations in the present action exclusively relate to events that occurred between the winter of 2013 and the summer of 2014, prior to the execution of the

4

Settlement Agreement and the release of any and all claims against the Aerensons and Rojan 586 Polly, LLC on November 5, 2014. (*Id.* at ¶25.)

On December 23, 2014, alleging that Timothy McKenna materially breached this Settlement Agreement, Plaintiffs filed suit in the Delaware Court of Chancery seeking a temporary restraining order against Michael and Timothy McKenna, Arnold Dunn, and MAT Site Management, LLC. (ECF Docket No. 299 at ¶16.) As such, all parties agree that Plaintiff Gaudioso knew of the allegations of Michael McKenna directing landscaping services to the Aerensons by no later than December 24, 2014. (ECF Docket No. 299 at ¶15.) Plaintiff Gaudioso has also testified that he was aware of a handwritten agreement between Timothy McKenna and Robert Aerenson for snow removal services more than two years prior to filing suit in this matter on February 7, 2017. (*Id.* at ¶¶12-13.)

## II. STANDARD OF REVIEW

### a. Summary Judgment

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In this analysis, all facts are viewed in the light most favorable to the non-moving party. ty. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 903 (1990) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). Therefore, it follows that for purposes of summary judgment, a dispute is genuine when the "evidence is such that a

5

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The substantive law governing a case determines which facts are material. *Id.* As such, factual disputes that are irrelevant or unnecessary will not be counted and only those disputes of fact that "might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.*

Indeed, the Supreme Court has emphasized that:

"[t]he plain language of Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial; in such a situation, there can be no genuine issues as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party bears the burden of proof..."

*Celotex Corp. v. Catrett* 477 U.S. 317, 319 (1986).

### III. ANALYSIS

#### a. The Release Contained Within the Settlement Agreement is Valid as to the Aerenson Defendants

On November 4, 2014 Plaintiffs and Defendant Timothy McKenna signed a Settlement Agreement releasing McKenna from all liability for claims dating prior to the execution of the Agreement. (ECF Docket No. 268, Ex. 19.) This Settlement Agreement also named "Rojan 586 Polly LLC, Robert Aerenson, Norman Aerenson Capson Millsboro LLC, [and] Polly Drummond Shopping Center" as intended third-party beneficiaries and recipients of a similar general release. (*Id.* at ¶4.)

Plaintiffs argue that this general release does not permit this Court to grant summary judgment because (1) Timothy McKenna allegedly breached the terms and conditions of the

Settlement Agreement; and (2) the Aerenson Defendants provided no consideration for the release. (ECF Docket No. 286 at 30-32.) This Court disagrees with Plaintiffs and finds that this general release is valid as it pertains to the Aerenson Defendants. As such, we grant summary judgment in favor of the Aerenson Defendants on this basis.[5]

In *Topp Copy Prods. v. Singletary*, the Supreme Court of Pennsylvania[6] recognized that exculpatory clauses are valid when (1) the clause does not contravene public policy; (2) the contract is between persons relating entirely to their private affairs; and (3) each party is a free bargaining agent to the agreement so that the contract is not one of adhesion. *Topp Copy Prods. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993) (internal citations omitted). As "guiding standards" to interpret such clauses, the Supreme Court of Pennsylvania has emphasized that:

> (1) the contract language must be construed strictly, since exculpatory language is not favored by the law; (2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; (3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and (4) the burden of establishing the immunity is upon the party invoking protection under the clause.

*Id.* (citing *Dilks v. Flohr Chevrolet*, 192 A.2d 682, 687 (Pa. 1963)).

In response to the Aerenson Defendants' Motion for Summary Judgment, Plaintiffs have not presented any argument against any of the above three factors. (ECF Docket No. 286.) We do not find that Paragraph 4 of the Settlement Agreement contravenes public policy.

---

[5] In their Motion for Summary Judgment, the Aerenson Defendants move for summary judgment on four other bases: (1) Plaintiffs' state law claims are time-barred; (2) Plaintiffs' RICO claims are not supported by any predicate acts and there is no issue of fact as to whether the Aerensons are a part of a racketeering enterprise; (3) Plaintiffs' state law claims are unsupported by fact or law; and (4) Plaintiffs sued the improper parties by suing Norman and Robert Aerenson in their individual capacities. (ECF Docket No. 265.) In this Memorandum, this Court grants summary judgment based on an applicable general release. Because of this, we decline to fully assess the strength of the Aerenson Defendants' other arguments. However, it does appear that Plaintiffs' state law claims are likely time-barred and that Plaintiffs erred in suing Norman and Robert Aerenson individually rather than their company, Rojan 586 Polly LLC. Additionally, Plaintiffs have not provided a factual basis for their claims against Norman Aerenson.

[6] The Settlement Agreement was "executed and delivered in Philadelphia, Pennsylvania and shall be construed, interpreted, and enforced by an in accordance with, the laws of the Commonwealth of Pennsylvania, without reference to its conflict of law principles." (ECF Docket No. 286, Ex. 19 at ¶10.)

Additionally, the Settlement Agreement at issue entirely relates to the private affairs of Plaintiffs, Timothy McKenna, and the Aerenson Defendants. (ECF Docket No. 286, Ex. 19.) Moreover, the contract does not appear to be an adhesion contract and no party has claimed that it is. Thus, we determine that the release is valid on its face.

Next, turning to the Supreme Court of Pennsylvania's guiding standards in *Topp Copy*, we have determined that the release is enforceable. Even construed strictly, the release's language is explicit and clear in granting the Aerenson Defendants a general release from liability. (*Id.* at ¶4.) Moreover, the contract states the parties' intention "to be legally bound" and carefully elaborates the broad extent of the release. (*Id.* at 2.) Lastly, the language is unambiguous; no party has identified ambiguities or proposed alternate interpretations within the release. Considering this, the release is enforceable.

### i. Timothy McKenna's Alleged Breach Does Not Invalidate the Aerenson Defendants' Release

After the Settlement Agreement was executed on November 4, 2014, Plaintiffs allege that "Tim McKenna breached the terms and conditions of the Settlement Agreement by working with Michael [McKenna, his son,] who . . . 'had formed a company to compete against [Plaintiffs] . . . and was engaged in industrial espionage stealing from [Plaintiffs] and now tortuously interfering with [Plaintiffs'] business relationships.'" (ECF Docket No. 286 at 30.) Plaintiffs subsequently filed suit in the Delaware Court of Chancery, seeking a temporary restraining order against Timothy McKenna, Michael McKenna, Arnold Dunn, and MAT Site Management. *Laurel Gardens Holdings, LLC v. McKenna*, No. 10491-VCP (Del. Ch. Jan. 2, 2015). Vice Chancellor Donald F. Parsons, Jr. granted this temporary restraining order. *Id.*

Now, Plaintiffs argue that "[b]y proceeding with the matter against Tim McKenna and entering a TRO against him . . . the Court *ipso facto* held that Tim McKenna breached the terms of the Settlement Agreement and deemed the release therein null and void." (ECF Docket No. 286 at 31.) Plaintiffs further contend that the doctrine of *res judicata* thus applies and "the [alleged] breach [by Timothy McKenna] results in [the Settlement Agreement] being null and void in all respects, including Paragraph 4 whereby the Aerensons were supposedly released." *Id.*

We disagree with Plaintiffs' analysis. First, contrary to Plaintiffs' assertion, the Delaware Court of Chancery never held that Timothy McKenna materially breached the Settlement Agreement. *Laurel Gardens Holdings, LLC*, No. 10491-VCP. The Court neither determined that the release was void nor that it was unenforceable, either in its entirety or specifically as to the Aerenson Defendants. *Id.* It does not follow that, by granting a temporary restraining order against Timothy McKenna, the Delaware Chancery Court "*ipso facto* held that Tim McKenna breached the terms of the Settlement Agreement and deemed the release therein null and void." (ECF Docket No. 286 at 31.) Plaintiffs propose that by stating that "there is an *allegation* that Timothy acted in breach of his settlement agreement by, for example, disparaging LG and AWS," the Court globally voided the Settlement Agreement. *Id.*, H'rg Tr. at 54:11-54:13 (emphasis added). A recitation of a party's allegations is not a holding. Plaintiffs have provided no evidence that the Delaware Court of Chancery, in fact, held either (1) that Timothy McKenna materially breached the Settlement Agreement; or (2) that the Court held that it was void or unenforceable, either globally or specifically against the Aerenson Defendants.

Moreover, Plaintiffs do not cite any applicable law to stand for the proposition that if Timothy McKenna materially breached the Settlement Agreement, the release granted to the

9

Aerenson Defendants as non-breaching, named, intended third-party beneficiaries would be void. As such, Timothy McKenna's alleged breach of the Settlement Agreement does not invalidate the Aerenson Defendants' general release contained therein.

### ii. The Aerenson Defendants Need Not Have Provided Consideration for the Release to be Valid and Enforceable

Plaintiffs also argue that because "[t]here was no such consideration . . . given by Bobby or Norman Aerenson or the related entities in exchange for the release . . . it is null and void." (ECF Docket No. 286 at 32). Absent fraud, accident, or mutual mistake, Pennsylvania courts have consistently upheld contractual releases from liability, even when one or more released party has not contributed consideration. *Hasselrode v. Gnagey*, 172 A.2d 764 (Pa. 1961); *In re Estate of Bodnar*, 372 A.2d 746 (Pa. 1977); *Wolbach v. Fay*, 412 A.2d 487 (Pa. 1980). Indeed, courts have reliably upheld such releases even when the agreements do not explicitly name all parties to be released. *Id.*

The Supreme Court of Pennsylvania specifically addressed this issue in *Buttermore v. Aliquippa Hospital*, in which it assessed "the effect to be accorded a release which by its terms discharges all claims and parties thereto even though it results in the discharge of others who have not contributed consideration toward the release." *Buttermore v. Aliquippa Hosp.*, 561 A.2d 733, 735 (Pa. 1989). In *Buttermore*, the Court considered the application of a release, contained within a settlement agreement, that broadly applied to "any and all other persons . . . whether herein named or not." *Id.* (internal citations omitted). The plaintiff-appellee, who argued against the release in question, contended that the release could not apply to defendant-appellants as (1) he did not intend to release them from liability, and (2) the defendant-appellants did not contribute consideration. *Id.* Ultimately, the Court upheld the release, stating that "the

10

effect of a release must be determined from the ordinary meaning of its language." *Id.* In so deciding, the Court drew upon its earlier decision in *Emery v. Mackiewicz*, reemphasizing that:

> If such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the law to permit this release to be circumvented or held to be nugatory.

*Id.* at 735 (quoting *Emery v. Mackiewicz*, 240 A.2d 68, 70 (Pa. 1980)).

Here, the Aerenson Defendants were intended third-party beneficiaries to the Settlement Agreement executed by and among Plaintiffs and Timothy McKenna. (ECF Docket No. 286, Ex. 19.) Looking to the ordinary meaning of the release's language, Plaintiffs plainly intended to grant the Aerenson Defendants a general release. The Aerenson Defendants did not provide consideration for the release the Settlement Agreement granted to them. However, they need not have done so for the release to be valid under Pennsylvania law.

## IV. CONCLUSION

The accompanying Order grants the Aerensons Defendants' Motion for Summary Judgment for the foregoing reasons. No genuine dispute of material facts exists that is relevant to the validity of the applicable release and Settlement Agreement and the Aerenson Defendants are thus entitled to judgment as a matter of law.