IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREL GARDENS, LLC, *et al.*, | |
| Plaintiffs, | |
| v. | CIVIL ACTION<br>No. 17-570 |
| TIMOTHY MCKENNA, *et al.*, | |
| Defendants. | |

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**                                                                 **APRIL 15, 2020**


This matter is now before the Court on the fourth Motion for Summary Judgment[1] we will decide at this stage, brought by Defendants Hank and Margit Julicher (collectively, "Julicher Defendants").  (ECF Docket No. 273.)  The Plaintiffs'[2] claims against the Julicher Defendants, like all claims in this dispute, revolve around an alleged conspiracy centered on Timothy McKenna, a former business associate and employee of Plaintiff Charles Gaudioso.  (ECF Docket No. 43.)  In particular, Plaintiffs allege that McKenna organized "a widespread criminal conspiracy that was engaged in a pattern of racketeering activity across state lines … [in violation of] the Racketeer Influenced and Corrupt Organizations Act ('RICO'), 18 U.S.C. §§ 1961-1968."  (ECF Docket No. 293 at 1.)

---

[1] On March 25, 2019, this Court granted certain named parties, who sought leave to do so, permission to file early summary judgment motions.  (ECF Docket No. 254.)  The Julicher Defendants were not among those defendants granted leave.  (*Id.*)  Despite this, we will evaluate this Motion on its merits.

[2] The Plaintiffs in this matter are (1) Charles P. Gaudioso; (2) LGSM, GP; (3) Laurel Gardens Holdings, LLC; (4) American Winter Services, LLC; and (5) Laurel Gardens, LLC.  (ECF Docket No. 43.)

Plaintiffs have brought nine[3] claims against the Julicher Defendants, including violations of the federal RICO statute and Pennsylvania common law.[4]  (ECF Docket No. 43 at ¶¶ 271-337.)  In their First Amended Complaint ("FAC"), Plaintiffs allege that, despite warnings to the contrary, the Julicher Defendants conducted business with Timothy McKenna in furtherance of his goals to harm Plaintiffs.  (ECF Docket No. 43 at ¶ 122.)  They further allege that, through a pattern of threats of physical violence and financial ruin, as well as misuse of Plaintiffs' proprietary information, the Julicher Defendants coordinated with Timothy McKenna, and his son Michael McKenna, to cause Plaintiffs to go out of business.  (*Id*. at ¶¶ 271-337.)  The Julicher Defendants have moved for summary judgment on all counts.  (ECF Docket No. 273.)  For the reasons detailed in this Memorandum, we deny summary judgment as there is a genuine dispute of material fact as to each count.

---

[3] Defendants' Motion and Reply Brief both incorrectly indicate that "Plaintiffs assert[ed] ten counts against the Julicher Defendants," likely in erroneous reference to the claim for breach of fiduciary duty brought against Timothy and Michael McKenna and no other defendants.  (ECF Docket No. 273 at 5; ECF Docket No. 297 at 6.)  We will not address this claim as Plaintiffs have not asserted it against the Julicher Defendants.

[4] As numbered in Plaintiffs' First Amended Complaint, the allegations against the Julicher Defendants are:

I.      Aiding and Abetting Breach of Fiduciary Duty;
II.     Civil Conspiracy;
III.    Civil RICO § 1962(c);
IV.      Civil RICO § 1962(b);
V.      Civil RICO § 1962(d);
VI.      Fraud;
VIII.   Conversion;
IX.     Negligent Misrepresentation; and
X.      Tortious Interference with Contract.  (ECF Docket No. 43 at ¶¶ 271-336.)

## I.     RELEVANT FACTUAL BACKGROUND[5]

Plaintiffs' relationship with the Julicher Defendants began on or around October 2013, when a former Laurel Gardens consultant, Jim Porter, introduced Plaintiff Charles Gaudioso to Defendant Hank Julicher, with the intent of Gaudioso replacing a prior lender with the Julicher Defendants.  (ECF Docket No. 273 at 2.)  At this meeting, Gaudioso and Hank Julicher discussed an agreement whereby the Julicher Defendants would loan $300,000 to Plaintiffs.  (*Id*.)  On or around October 2, 2013, Laurel Gardens Holdings, LLC ("LGH") and Laurel Gardens, LLC ("LG") entered into a Secured Promissory Note with Margit Julicher for this amount.  (*Id.*)  Gaudioso signed this Secured Promissory Note on behalf of LGH and LG.  (*Id.* at 2-3.)  The interest on this loan was 20%; interest-only payments were to be made for 11 months at $5,000 per month, followed by a twelfth and final payment consisting of the remaining interest plus the entire principal.  (ECF Docket No. 293 at 3.)  As part of this agreement, LGH and LG also agreed to provide labor and materials for a 60-foot wall on the Julicher Defendants' property, and to pay up to $2,000 per month toward the lease payment on Hank Julicher's BMW vehicle.  (*Id.*)

Later, in 2015, in an effort to restructure and reduce the debt owed by Plaintiffs to the Julicher Defendants, the Julicher Defendants negotiated a deal with Moon Nurseries, LLC ("Moon Nurseries").[6]  (ECF Docket No. 273 at 3.)  This deal allowed a $100,000 reduction in Plaintiffs' debt in exchange for an assignment of Moon Nurseries landscaping inventory that LG had

---

[5] We note that Parties did not comply with applicable Policies and Procedures relative to the Julicher Defendants' Motion for Summary Judgment.  *See* Judge Jeffrey L. Schmehl's Policies and Procedures, § C.4., *available at* https://www.paed.uscourts.gov/documents/procedures/scmpol.pdf ("Along with any motion for summary judgment, the parties must file a joint stipulation listing all of the material facts on which the parties can agree. Judge Schmehl expects parties opposing summary judgment motions to cooperate in preparing such stipulations. The parties should then address in their briefs any other facts that could not be agreed upon because they are in dispute as to either correctness or materiality, or because one party simply asserts they should not be in dispute, but extensive factual disputes may lead to denial of summary judgment motions.").

[6] Moon Nurseries, LLC was previously a named defendant in this matter.  It was terminated as a defendant on April 21, 2017 when Plaintiffs filed their Amended Complaint.  (*See* ECF Docket No. 43.)

acquired.  (ECF Docket No. 293 at 5.)  This acquisition, named by Plaintiffs as the "salt-for-trees" deal, was structured as follows: in 2014, Plaintiff AWS—through Defendant Timothy McKenna[7]—coordinated the delivery of approximately $500,000 worth of salt directly from Chemical Equipment Labs to Moon Nurseries, in exchange for a credit of $210,000 worth of trees and $290,000 in cash from Moon Nurseries to LG.  (*Id*. Ex. 10 at ¶ 13.b.i.)  LG ultimately received approximately $130,000 worth of trees and $70,000 in cash from Moon Nurseries, with a remaining balance of $300,000 owed by Moon Nurseries to LG.  (*Id*. Ex. 10 at ¶ 13.b.ii.)  Chemical Equipment was then paid approximately $200,000, leaving a balance owed by AWS to Chemical Equipment of $308,650.50.  (*Id*.)  In a later settlement agreement by and among LGH, LG, AWS, Gaudioso, and Timothy McKenna, McKenna assumed the debt obligation that AWS owed to Chemical Equipment.  (*Id*. at 5.)

As a result of this debt restructuring and reduction, the principal that Plaintiffs owed to the Julicher Defendants was lowered to approximately $76,000.  (ECF Docket No. 273 at 4.)  On or around January 14, 2016, the Julicher Defendants filed an action in the Chester County Court of Common Pleas seeking to recover Plaintiffs' then-remaining loan balance in the amount of $91,766.04, plus a daily continuing interest rate of $15.08.  (*Id*. Ex. G at 1.)  The Julicher Defendants claim to have received a judgment in their favor but have not provided this Court with proof thereof.  (*See* ECF Docket No. 273 at 4.)

Plaintiffs contend that this debt restructuring, reduction, and reassignment was unfavorable to them and that they did not enter into it freely.  (ECF Docket No. 293 at 6.)  Particularly, they allege that, "[t]o convince Gaudioso as the CEO of LGH to enter into this deal, Hank Julicher

---

[7] In their Motion, the Julicher Defendants claim that Gaudioso admitted in his deposition that "Moving Defendants singlehandedly negotiated the transfer…" (ECF Docket No. 273 at 3.)  This is false.  In the portion of Gaudioso's deposition that the Julicher Defendants cite, Gaudioso does not speak of the Julicher Defendants and, in fact, notes that Timothy McKenna organized this deal.  (*See id*. Ex. A at 52:4-16.)

threatened him with being sexually assaulted and being forced into bankruptcy if he declined."
(*Id*.)  Plaintiffs assert that this was a pattern of behavior, in which Hank Julicher threatened
physical violence or financial ruin to collect debts.  (*Id*. Ex. 10 at ¶ 21 (". . .he used threats of
violence against Jim Porter, the CEO of LG and AWS at that time, and me if we did not enter into
that deal. For example, Hank Julicher threatened that he would have a friend of his, Dante Caprio
who is associated with the Gambino crime family in New York, hold a gun to my head while two
men sexually assaulted me. He also threatened that he would put LG and AWS into bankruptcy.
Hank Julicher further threatened to report me for fraud and cause me to lose my Series 7 and Series
79 licenses as an investment banker. He likewise threatened Jim Porter by asking rhetorically
whether he needed his knees to play squash. Based on these threats of violence and economic
demise, I was forced to enter into the salt-for-trees deal, I lost considerable money on the deal, and
the Julichers made a significant amount of money.").)  In support of these allegations, Plaintiffs
have submitted the testimony of two individuals alleged to have heard such threats.  (*See* ECF
Docket No. 293 at 7-8 (noting the testimony of Ron Coruzzi and Christopher Wright).)  In addition,
Plaintiffs also allege that the Julicher Defendants misused proprietary LG and LGH information
to fraudulently achieve this "salt-for-trees" deal, that was largely favorable to the Julicher
Defendants and harmful to Plaintiffs.  (*Id*. at 9-12.)

While the Julicher Defendants loaned money to Plaintiffs, they also made numerous loans
to Timothy McKenna and his businesses.  (ECF Docket No. 293 at 3-4; *id.* Ex. 1 at 17:24-18:4
("That was an ongoing process of getting hit up every couple [of] weeks for another $5,000
because the business had to be—keep going or his mortgage had to be paid.").)  Plaintiffs have
submitted evidence of at least three such loans: (1) an April 21, 2014 loan from Margit Julicher to
McKenna American, LLC (a company owned by Timothy McKenna) for $6,600; (2) a June 2,

2014 loan from Margit Julicher to Timothy McKenna, in his personal capacity, for $9,500; and (3) a loan of an undetermined date and amount from Margit Julicher to MAT Site Management, the business that McKenna allegedly started to drive Plaintiffs out of business.  (*Id*. Exs. 7-9.)

## II.   STANDARD OF REVIEW

### a.   Summary Judgment[8]

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In this analysis, all facts are viewed in the light most favorable to the non-moving party. ty. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 903 (1990) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).  Therefore, it follows that for purposes of summary judgment, a dispute is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The substantive law governing a case determines which facts are material.  *Id.*  As such, factual disputes that are irrelevant or unnecessary will not be counted and only those disputes of fact that "might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.*

---

[8] In Defendants' Reply to Plaintiffs' Response to the Motion for Summary Judgment, Defendants' counsel indicated that Defendants thereby "move[d] to dismiss all counts with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6)."  (ECF Docket No. 297 at 2.)  This is procedurally improper and legally incorrect.  Summary judgment motions are filed pursuant to Federal Rule of Civil Procedure 56.  FED. R. CIV. P. 56.  Defendants have already filed a motion pursuant to Rule 12(b)(6).  (ECF Docket No. 58.)  It was denied.  (ECF Docket No. 146.)

Indeed, the Supreme Court has emphasized that:

"[t]he plain language of Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial; in such a situation, there can be no genuine issues as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial; the moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. . ."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 319 (1986).

## III.   ANALYSIS

Plaintiffs have levied nine claims against the Julicher Defendants, who have moved for summary judgment on all counts.[9]   In their Motion for Summary Judgment, the Julicher Defendants address each claim in turn while also arguing that Plaintiffs do not have standing and that the doctrine of *res judicata* mandates an entry of summary judgment in their favor.  (ECF Docket No. 273.)  As their standing and *res judicata* arguments are outcome determinative on all counts, we address these arguments first.  We then analyze each count in the order that it appears in Plaintiffs' FAC.

---

[9] The Julicher Defendants have improperly labeled each section of their Motion as a "Motion to Dismiss."  (*See* ECF Docket No. 273.)  Moreover, the Julicher Defendants repeatedly refer to the incorrect standard for summary judgment, and instead use that for dismissing claims under Federal Rule of Civil Procedure 12(b)(6).  (*See e.g.*, ECF Docket No. 273 at 8 (". . . fails to state a claim upon which relief can be granted. . .").)  We will construe the Motion in its entirety as a Motion for Summary Judgment, as indicated by the Motion's title.

### a.   Plaintiffs Have Standing to Bring the Claims Asserted

The Julicher Defendants' standing argument is unclear.[10]  (*See id.* at 16.)  They appear to argue that because the Julichers loaned money to Laurel Gardens Holdings, LLC ("LGH"), and the proprietary information at issue was solely "LGH information,"[11] that only LGH was injured and, thus, that only LGH has standing to bring any claim asserted here.  (*Id.*)  The Julicher Defendants cite two non-binding cases from the Middle District of Pennsylvania in support of this claim.  (*Id.* (citations omitted).)

First, they cite to *Symonies v. Sobol (In re Sobol)*, a bankruptcy case, with no indication as to the proposition for which they cite the case.  *Symonies v. Sobol (In re Sobol)*, 545 B.R. 477 (Bankr. M.D. Pa. 2016); (*See* ECF Docket No. 273 at 16 (describing *Symonies* only as "applying Pa. law.").)  Second, they cite *Irish v. Ferguson* noting in a parenthetical that "in a RICO context, [a] member of an LLC filing a RICO on his own behalf only has derivative standing."  (*Id.*)  To the extent that *Irish* addresses standing, it only addresses standing in claims brought under federal RICO and antitrust statutes.  *Irish v. Ferguson*, 970 F. Supp. 2d 317, 347-52, 362-63 (M.D. Pa. 2013).  As such, the Julicher Defendants have offered no relevant legal argument—either persuasive or binding—to support their claim that Plaintiffs lack standing to bring Pennsylvania state law claims.

Moreover, Plaintiffs also have standing to assert RICO claims.  First, the Julicher Defendants' claim that only LGH's information was allegedly misused is false.  (*See* ECF Docket No. 43 Ex. L.)  Indeed, in a September 23, 2014 email, an associate of the Julicher Defendants

---

[10] We note that the Julicher Defendants' argument demands that "[a]ll [c]ounts as to all Defendants other than LGH [s]hould be [d]ismissed based on [a] [l]ack of [s]tanding[.]"  (ECF Docket No. 273 at 16.)  First, LGH is a Plaintiff in this matter.  Second, this is a motion for summary judgment and not a motion to dismiss.

[11] There is a dispute as to this fact.  Plaintiffs assert, at least, that the Julicher Defendants "obtain[ed] confidential information on LGH, LG, and AWS. . ."  (ECF Docket No. 293 at 32.)

demanded proprietary information (which was later allegedly misused) not only from LGH, but also from LG and American Winters Services, LLC ("AWS"). (*Id.*) Both of the Julicher Defendants appear to have been copied on this email. (*Id.*) Second, the Julicher Defendants' claim that the loan in question was only to LGH is also false. (*See* ECF Docket No. 293 Ex. 4 (showing that the loan was from Margit Julicher to Laurel Gardens Holdings, LLC and Laurel Gardens, LLC).) Third, the Third Circuit has stated that business owners who have been injured may bring RICO actions on their own behalf. *Gagliardi v. Kratzenberg*, 188 Fed. App'x 86, 89 (3d Cir. 2006) (". . .to the extent that Gagliardi brought a RICO claim on his own behalf for actions taken while he was owned the property in question, he had standing to proceed.").

Furthermore, the (persuasive, non-binding) case law that the Julicher Defendants cite is easily distinguished from the current matter. In *Irish*, the court found that an individual member of an LLC did not have RICO standing as the "type of injury, the looting of a company . . . [did] not confer individual standing on Plaintiffs." *Irish*, 970 F. Supp. 2d at 349. Notably, the looted business entities were not parties to the case. *Id.* at 348 ("Although Irish is a member of the Lakefront limited liability company, Lakefront is not a plaintiff in this action. The Complaint, however, alleges harm to Lakefront."). The court held that the *Irish* plaintiffs did not have standing to bring a derivative action on behalf of LLCs of which they were members because the LLCs, not the plaintiffs, suffered direct harm. *Id.* at 347-52. In determining whether the alleged injuries were direct or derivative, the *Irish* court noted that for RICO claims:

> a court must make an independent determination as to whether a plaintiff's claim asserts a direct or derivative harm. Accordingly, the parties' characterization of the claims is not dispositive. Whether a claim is direct or derivative depends on "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or any other remedy (the corporation or the stockholders, individually).

*Id.* (citing *McCoy-McMahon v. Godlove*, No. 08-5989, 2011 U.S. Dist. LEXIS 113559, at *14 (E.D. Pa. Sept. 30, 2011).

Here, Plaintiff Gaudioso and the Plaintiff business entities both suffered direct harm. Gaudioso was the owner and CEO of the business entity plaintiffs during the relevant period and Plaintiffs allege direct threats of physical violence and financial ruin against Gaudioso as part of this action. (*See, e.g.,* ECF Docket No. 43 at ¶ 195 (". . . he intends to destroy the Company and [Gaudioso] personally.") Additionally, as owner of the business entity plaintiffs, Gaudioso would receive a significant portion of any recovery or remedy in this matter. As such, we find that all Plaintiffs have standing to pursue all claims asserted here.

### b. *Res Judicata* Does Not Preclude Plaintiffs' Claims in this Matter

As a defense against all claims, the Julicher Defendants invoke the doctrine of *res judicata*. (ECF Docket No. 273 at 20-25.) *Res judicata* "is a court-created rule that is designed to [prevent] . . . repetitious and needless claim[s] . . . When one has been given the opportunity to fully present his case in a court and the contested issue is decided against him, he may not later renew the litigation in another court.'" *Purter v. Heckler*, 771 F.2d 682, 689-90 (3d Cir. 1985) (internal quotations and citations omitted). To successfully assert this doctrine, the party doing so must show that: "(1) there has been a final judgment on the merits in a prior suit; (2) the prior suit involves the same parties or their privies and (3) the subsequent suit is based on the same causes of action." *Id.* at 690 (citations omitted).

Here, the Julicher Defendants assert that an Order from the Chester County Court of Common Pleas precludes Plaintiffs from pursuing this matter against them. (ECF Docket No. 273 at 20-25.) To the extent that it is comprehensible, the Julicher Defendants' *res judicata* argument

is largely conclusory.[12]  The argument begins by proposing that "[b]ased on the principal of [r]es [j]udicata and the resulting Order from the Court of Common Pleas in Chester County . . . Laurel Gardens' claims of not only having total reduction of the Secured Promissory note, but also the claim that Moving Defendants now owes Laurel Gardens monies, are completely baseless."  (*Id.* at 20.)  The Julicher Defendants then very briefly describe this Chester County Order as enforcing a debt owed by Plaintiffs to the Julicher Defendants.  (*Id.*)

The Julicher Defendants then spend nearly four pages detailing the legal doctrine of and the policy behind *res judicata*.  (*Id.* at 21-24.)  However, but for brief, conclusory claims in favor of the application of this doctrine, they provide no application of this law and policy to the facts at hand.  (*See id.* at 20-24.)  Similarly, the Julicher Defendants' Reply to Plaintiffs' Response to the Motion for Summary Judgment contains no application of the facts here to the doctrine of *res judicata*.  (*See* ECF Docket No. 297.)  Moreover, it is evident that the cause of action in the Chester County Court of Common Pleas case (i.e., enforcing a debt) is not the same as those brought by Plaintiffs in this matter.  (*See* ECF Docket No. 43.)  As such, we find that Plaintiffs are not precluded from bringing this action by *res judicata* and we will proceed to assess each count for summary judgment.

### c.  COUNT I: Aiding and Abetting Breach of Fiduciary Duty

In response to Plaintiffs' claims that the Julicher Defendants aided and abetted a breach of fiduciary duty, the Julicher Defendants offer two arguments: (1) Plaintiffs fail to plead sufficient

---

[12] The section of the Julicher Defendants' Motion arguing in favor of applying *res judicata* is in places difficult to parse.  It is unclear where this argument begins, and the section contains many typographical errors and at least one full paragraph that appears twice, rendering the section difficult to read.  (*See* ECF Docket No. 273 at 21-22.)

factual allegations to sustain such a claim; and (2) the statute of limitations precludes Plaintiffs from bringing such a claim.  (ECF Docket No. 273 at 8-9.)

Under Pennsylvania law, to maintain a cause of action for aiding and abetting a breach of fiduciary duty, three elements must be met: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.  *LHRET Reading, L.P. v. Keystone Oncology Assocs., P.C.*, No. 14-6169, 2015 U.S. Dist. LEXIS 80275, at *7 (E.D. Pa. June 22, 2015) (citing *Reis v. Barley, Snyder, Senft & Cohen*, 484 F. Supp. 2d 337, 350-51 (E.D. Pa. 2007)).

In their Motion, the Julicher Defendants do not contest Plaintiffs' factual assertions as to the first two elements.  (*See* ECF Docket No. 273 at 8-10.)  They do not dispute that Timothy and Michael McKenna owed a fiduciary duty to Plaintiffs that the McKennas breached.  (*See id.*) Rather, the Julicher Defendants focus on the third element, contending that "Plaintiffs fail to plead facts to support that the Julicher Defendants gave substantial assistance or encouragement to effectuate a breach of fiduciary duty by [the] McKenna[s] to Plaintiffs."  (*Id.* at 9.)  However, Plaintiffs have stated that "[d]espite warnings to Hank Julicher about what the McKennas were doing—stealing LG's and AWS's customers and striving to put them out of business—the Julichers continued to lend them money to further the McKennas' and the Julichers' goals and objectives."  (ECF Docket No. 293 at 16.)  This presents a factual dispute for the jury to decide. As such, we will not grant summary judgment on this basis.

In support of their second argument, the Julicher Defendants aver that because Timothy McKenna was terminated in the Summer of 2014, and because any fiduciary duty McKenna owed to Plaintiffs ended at termination, that the applicable two-year statute of limitations precludes Plaintiffs from asserting a claim for aiding and abetting against the Julicher Defendants.  (ECF

Docket No. 273 at 9.)  The Julicher Defendants correctly identify that Plaintiffs' claim is governed by a two-year statute of limitations.  PA. CONS. STAT. §5524(7) (applying a two-year statute of limitations to "any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud . . .").   Under the applicable Pennsylvania law, statutes of limitations are calculated from the time the cause of action accrues. PA. CONS. STAT. 5502(a).  A cause of action accrues when the plaintiff could have "first maintained the action to a successful conclusion."  *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005).

Pennsylvania law, however, provides exceptions that act to toll the running of a statute of limitations.   *Id*. at 858.   In this matter, Plaintiffs invoke the discovery rule and fraudulent concealment exceptions.  (ECF Docket No. 293 at 16.)  The discovery rule allows the tolling of a statute of limitations "where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period. . ." *Hayward v. Med. Ctr. of Beaver Cnty.*, 608 A.2d 1040, 1043 (Pa. 1992).  In applying the discovery rule, the Pennsylvania Supreme Court has established that "the salient point . . . is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause."  *Fine*, 870 A.2d at 858.  When the discovery rule applies, the statute of limitations "is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct."  *Id*. at 859.

Under the doctrine of fraudulent concealment, a defendant is estopped from invoking the statute of limitations if "through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts."  *Id.* at 860 (citing *Deemer v. Weaver*, 187 A.

215, 215 (Pa. 1936)).  For the doctrine to apply, "fraud in the strictest sense" is not required, but rather "fraud in the broadest sense, which includes an unintentional deception." *Id.*  The Pennsylvania Supreme Court, however, has also emphasized that the standard of reasonable diligence dictates that "a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause." *Id.* at 861.

Other Defendants in this matter have successfully argued for summary judgment on this basis as the facts of those claims did not trigger the application of either the discovery rule or the doctrine of fraudulent concealment.  (*See, e.g.*, ECF Docket No. 258 at 15-16.)  The facts and arguments as presented here, however, mandate a different result.  Here, unlike as to other defendants in this matter, there is a factual dispute as to the applicability of the discovery rule.

Defendants aver that Plaintiffs' claim for aiding and abetting the breach of a fiduciary duty must fail because the underlying breach claim fails.  (ECF Docket No. 273 at 9.)  They assert that any fiduciary duty that Timothy McKenna owed Plaintiffs ended with the termination of his employment in the summer of 2014.  (*Id.*)  Following this argument, without any exception to the two-year statute of limitation, Plaintiffs claim would fail as Plaintiffs did not file a complaint in this matter until February 7, 2017.  (ECF Docket No. 1.)  Plaintiffs, however, claim that they did not discover the extent of the Julicher allegedly unlawful acts until February 17, 2016, upon receipt of a forensic financial report from an outside consultant, Asterion.  (ECF Docket No. 293 at 16.)  While Plaintiffs made similar arguments against other Motions for Summary Judgment, here there is no independent evidence suggesting that Plaintiffs knew or should have known of the Julichers' involvement before February 17, 2016.  Moreover, the Julicher Defendants have notably not contested Plaintiffs' assertion of either the discovery rule or the doctrine of fraudulent

concealment.  (*See* ECF Docket No. 297.)  It is thus for the jury to decide whether either exception applies.  As such, we find that there is a genuine dispute as to a material fact regarding the tolling of the statute of limitations and thus deny summary judgment on this count.

### d.  COUNT II: Civil Conspiracy

The Julicher Defendants' argument against Plaintiffs' common law conspiracy claim has two parts.  (*See* ECF Docket No. 273 at 10.)  First, the Julicher Defendants claim that "[b]ecause all claims in this action fail as a matter of law, there can be no conspiracy to commit the underlying acts."  (ECF Docket No. 273 at 10 (citing *McKeeman v. CoreStates Bank, N.A.*, 2000 PA Super 117, P13-16.).)[13]  As discussed elsewhere in this Memorandum, we have denied summary judgment as to all Pennsylvania common law claims and thus this argument fails.  (*See supra* Part I.b; *see also infra* Parts I.g-j.)

Second, the Julicher Defendants argue that "even if there were a viable claim . . . Plaintiffs fail to establish in discovery any legitimate facts [indicating] that the Julicher Defendants intentionally agreed with another defendant to do an unlawful act as required by Pennsylvania law."  (ECF Docket No. 273 at 10.)  To make a claim for civil conspiracy under Pennsylvania law, Plaintiffs must show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  *NSI Nursing Sols., Inc. v. Volume Recruitment Servs., LLC*, No. 17-1613, 2019 U.S. Dist. LEXIS 17170, at *22 (E.D. Pa. Feb. 4, 2019) (citations omitted).

---

[13] We also note that the section of *McKeeman* cited by the Julicher Defendants does not discuss a conspiracy claim and thus does not stand for the proposition for which the case is offered.

The Julicher Defendants assert that Plaintiffs have failed to prove (1) either an agreement among the Julicher Defendants and the McKennas; or (2) that the Julicher Defendants had the requisite malicious intent. (ECF Docket No. 273 at 10 (citing *Kist v. Fatula*, No. 3:2006-67, 2007 U.S. Dist. LEXIS 60615, at *26 (W.D. Pa. Aug. 17, 2007.).) The Third Circuit has instructed that, in conspiracy claims, "[p]laintiffs relying on circumstantial evidence of an agreement must make a showing at both [the pleadings and summary judgment] stages . . . of something more than merely parallel behavior . . . something plausibly sugges[tive of] (not merely consistent with) agreement." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322 (3d Cir. 2010) (citations and internal quotations omitted). That is, conspiracy allegations "are deficient if there are 'obvious alternative explanation[s]' for the facts alleged". *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).).

Here, Plaintiffs allegation of a conspiracy among the Julicher Defendants and Timothy and Michael McKenna is not merely based on parallel conduct. (*See* ECF Docket No. 43 at 22-25, 47, 55, 69-70.) Indeed, Julicher Defendants do not argue this and, notably, also do not argue that Plaintiffs have not presented a genuine dispute of material fact on the elements of this claim. (*Id.*) Plaintiffs have alleged that Hank Julicher, despite warnings from Plaintiff Gaudioso, "provide[d] Tim McKenna with the funds he needed to steal LG's and AWS's customers and put the companies out of business." (ECF Docket No. 293 at 18.) Moreover, Plaintiffs have submitted the testimony of at least two individuals who allegedly heard Hank Julicher make threats of bodily harm to collect a debt in connection with this alleged conspiracy. (ECF Docket No. 293 Ex. 11 at 895:7-896:6; *id.* at Ex. 12 at 629:4-630:7.) As a result, we find that there is a genuine dispute as to material fact and we deny the Julicher Defendants' Motion for Summary Judgment on this count.

### e.   COUNT III: Civil RICO § 1962(c)

Subsection 1962(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (1970).

In *Reves v. Ernst & Young*, the Supreme Court interpreted what it means "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993). More specifically, the Supreme Court considered whether one must participate in the "operation or management of the enterprise" to be found liable for a violation under this subsection. *Id*. at 172. In this context, the Supreme Court understood the word "conduct" to require a degree of direction and the word "participate" to require some part in that direction. *Id*. at 179. The Court further clarified in *Reves*, however, that for a defendant to be liable under RICO § 1962(c), the defendant need not have a "formal position in the enterprise, but [that] *some* part in directing the enterprise's affairs is required." *Id*. Thus, the Court adopted an "operation or management" test, holding that "Congress did not intend to extend § 1962(c) liability beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity." *Id*. at 184. It also held, however, that "outsiders" may be liable under § 1962(c) if they are "associated with" an enterprise *and* participate in the operation or management of the enterprise. *Id*. at 184-85.

Here, the Julicher Defendants assert that "Plaintiffs have patently failed to establish any facts supporting. . ." their RICO claims, calling them "frivolous, baseless, and made without cogent

facts. . ." (ECF Docket No. 273 at 10-11.)  However, in their FAC, Plaintiffs allege that the Julicher

Defendants:

1. Provided loans to Timothy McKenna despite Plaintiffs' warnings, and with knowledge of McKenna's intent to form a rival enterprise to steal Plaintiffs' clients (*See* ECF Docket No. 273 Ex. 2 at 66:23-24:6 ("Q. Do you have any knowledge of Mr. McKenna—Timothy McKenna or Michael McKenna ever approaching Mr. Julicher to fund the formation of MAT Site Management?  A. There were—Timothy McKenna definitely approached Hank Julicher.");

2. Misused company information and sharing it with adversarial entities and persons, including Timothy McKenna and Moon Nurseries (ECF Docket No. 43 at ¶ 124.);

3. Physically threatened Plaintiff Gaudioso to compel an unfavorable agreement with Moon Nurseries and to collect debts (*Id*. at ¶ 125.b; *See also* ECF Docket No. 273 Ex. 2 at 33:16-34:1.);

4. Threatened Plaintiffs with financial ruin with the aim of acquiring Plaintiffs' clients (ECF Docket No. 43 at ¶ 125.c.; *See also* ECF Docket No. 273 Ex. 2 at 55:14-18, 60:16-61-10.);

5. Met with Timothy McKenna and "coordinated parties who were being encouraged by [McKenna] to push the Plaintiffs into bankruptcy. . ." (ECF Docket No. 43 at ¶ 125.d; *See also* ECF Docket No. 273 Ex. 2 at 59:21-60:3 ("And Hank always had the mindset that if he wasn't going to get his money back, that he was going to make them [Plaintiffs] pay. He was going to do anything that he possibly could to make them suffer, because he was not getting repaid his money.").); and

6. Offered to collect AWS accounts receivable from Moon Nurseries, totaling approximately $300,000, while withholding information regarding their controlling interest in Moon Nurseries (ECF Docket No. 43 at ¶ 125.i.).

Taking these allegations—alongside the deposition of Christopher Wright, a former business associate of the Julicher Defendants—and making all reasonable inferences in Plaintiffs' favor, we find that there is a genuine dispute of material fact on this count. It appears that the Julicher Defendants, through a pattern of financial assistance to McKenna, physical and financial threats to Plaintiffs, and misusing Plaintiffs' proprietary information, may have exercised a degree of "operation of management" over the alleged RICO enterprise. As such, we must deny summary judgment on this count.

### f.  COUNT IV: Civil RICO § 1962(b)

Subsection 1962(b) of the federal RICO statute prohibits "any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b) (1970).

In the context of RICO actions, the Supreme Court has held that "interest" means a "right, claim, title, or legal share in something." *Frankford Trust Co. v. Advest, Inc.*, No. 93-329, 1997 U.S. Dist. LEXIS 3441, at *23 (E.D. Pa. Jan. 14, 1997) (quoting *Russello v. U.S.*, 464 U.S. 16, 21 (1983).). The Supreme Court, however, has not defined the word "control" as it appears in this statute. *Id*. Notwithstanding, the Third Circuit has distinguished between subsection 1962(b) and 1962(c) of the statute, categorizing 1962(b) as the provision which prohibits the *acquisition* of an

enterprise and 1962(c) as that which prohibits the *operation* of an enterprise through racketeering. *Id.* at *23-24 (citing *Jaguar Cars, Inc. v. Royal Oaks Motor Car*, 46 F.3d 258, 267 (3d Cir. 1995)).

Following this reasoning, this Court has held that "the control contemplated by section 1962(b) is in the nature of the control one gains through the acquisition of sufficient stock to affect the composition of a board of directors . . . or by gaining a proprietary interest in the enterprise." *Id.* at *24. Indeed, this Court has cited the facts of *United States v. Local Union 560 of the International Brotherhood of Teamsters* as a "classic example of the degree of control" required under this subsection. *Id.* (citing *United States v. Local 560 of the Int'l Bhd. of Teamsters*, 780 F.2d 267 (3d Cir. 1985)). In that case, an organized crime syndicate seized control of a union, through murder and extortion, ultimately infiltrating, and essentially acquiring, the alleged RICO enterprise (the union). *Id.* at *24-25.

In their Motion, the Julicher Defendants first argue that "Plaintiffs do not prove any enterprise, let alone one with any structure." (*Id.* at 13.) The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It thus follows that there are two types of RICO enterprises: (1) a formal legal entity, such as a corporation or partnership; and (2) an association-in-fact, which is "any union or group of individuals associated in fact although not a legal entity." *Brand Energy & Infrastructure Servs. v. Irex Contracting Grp.*, No. 16-2499, 2017 U.S. Dist. LEXIS 43497, at *20 (quoting *United States v. Turkette*, 452 U.S. 576, 581-82 (1981).) This Court has recognized that "[i]n pleading the first type of enterprise, a legal entity, all aspects of the enterprise structure are met by mere proof of the existence of the legal entity." *Id.* (citations omitted). Additionally, however, this Court has noted that to sustain a RICO claim, the person alleged to have committed RICO violations must be

separate and distinct from the alleged enterprise.  *Id*. (citing *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995).   Here, Plaintiffs assert that the plaintiff companies LG and AWS, both legal entities, "are the business enterprises for RICO purposes. . ."  (ECF Docket No. 293 at 27 n.4.)  There is no dispute that these legal entities exist or that the Julicher Defendants are separate and distinct from them.  Thus, we find these allegations of a RICO enterprise sufficient to survive summary judgment.

The Julicher Defendants also argue in their Motion that Plaintiffs have not adequately pleaded a § 1962(b) claim, as "[t]he type of 'interest' contemplated in section 1962(b) is not just any 'interest' but a proprietary one, such as the acquisition of stock, and the 'control' contemplated is the power gained over an enterprise's operations by acquiring such interest."  (ECF Docket No. 273 at 12 (citing *Reves*, 570 U.S. at 172.).)  Plaintiffs, however, have alleged that the Julicher Defendants acquired a sufficient degree of control over the alleged RICO enterprises through loans to Timothy McKenna and a pattern of physical and financial threats.  (*See* ECF Docket No. 43 at ¶¶ 121-26, 195, 238.)

In addition to this pattern of threats, Plaintiffs have alleged a misuse of proprietary information and company property, and collaboration among Timothy McKenna, Michael McKenna, and the Julicher Defendants to acquire an interest in the alleged RICO enterprises.  (*See id.*; *see also* ECF Docket No. 293 at 28 ("Although Tim and Michael McKenna had no actual authority to alter LG's or AWS's billings to customers, they nevertheless managed to provide landscaping services at the Julichers' house without them being billed and continued with the salt-for-trees deal until it reached approximately $500,000, despite my explicit instructions to stop.").)  Considering this, we find that there is a genuine dispute as to an issue of material fact on this count; we thus deny summary judgment.

### g.   COUNT VI: Civil RICO § 1962(d)

The Julicher Defendants' argument for summary judgment on Plaintiffs' § 1962(d) claim is brief.  They propose that "[s]ince there is no plausible 1962 (b) or (c) claim proven here, there is no endeavor on the Julicher Defendants' part [that] satisf[ies] the element[s] of a substantive RICO offense."  (ECF Docket No. 273 at 13.)  For the reasons detailed above, both of Plaintiffs' federal RICO claims survive summary judgment.  Given the Julicher Defendants' argument, then, it follows that we must also deny summary judgment on this count.

### h.   COUNT VII: Fraud

To sustain a fraud claim under Pennsylvania law, Plaintiffs must show:

(1) a representation;
(2) which is material to the transaction at hand;
(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;
(4) with the intent of misleading another into relying on it;
(5) justifiable reliance on the misrepresentation; and
(6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

Under both the Pennsylvania Rules of Civil Procedure and applicable case law, claims of fraud brought under Pennsylvania law must be plead with particularity.  PA. R. CIV. P. 1019(b) ("Averments of fraud or mistake shall be averred with particularity."); *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 927 (Pa. Super. Ct. 1989) ("…a party raising a claim of fraud must set forth in its pleading specific facts to support the alleged fraud."); *Bata v. Central-Penn Nat'l Bank*, 224 A.2d 174, 179 (Pa. 1966) ("The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge.").

Here, the Julicher Defendants argue that, because Plaintiffs have not offered sufficient factual support for this fraud claim, this Court must grant summary judgment. (ECF Docket No. 273 at 14.) Assessing Plaintiffs' FAC, we find that summary judgment is inappropriate as Plaintiffs have presented adequate facts supporting this claim and there is a genuine dispute as to material facts on this count. (*See* ECF Docket No. 43 at ¶¶ 121-26, 195, 238-40.)

First, Plaintiffs aver that the Julicher Defendants "demanded . . . detailed, full, and material disclosures about [Plaintiffs'] business[es] . . . with the expectation that the materials provided [were] proprietary and for use [by] the lender alone solely to keep them informed." (*Id.* at ¶ 123.) Specifically, Plaintiffs claim that the Julicher Defendants represented the need for this information to "negotiate a better salt-for-trees deal on behalf of LGH, LG, and AWS." (ECF Docket No. 293 at 29.) Second, Plaintiffs allege that this representation was material to the transaction at issue as the Julicher Defendants "used this information inappropriately to enhance their own personal financial situations as well as those with whom [Plaintiffs] are adversarial." (ECF Docket No. 43 at ¶ 124.) Third, Plaintiffs assert that the Julicher Defendants knowingly intended to use this proprietary information for purposes other than the negotiation of a better salt-for-trees deal. (ECF Docket No. 43 at 124-25, 195.) Fourth, Plaintiffs allege that the Julicher Defendants intended to mislead Plaintiffs into reliance. (*Id.*) Fifth, we are satisfied that a reasonable jury could find in Plaintiffs' favor that their reliance on the Julicher Defendants' representation that proprietary and confidential information was needed to negotiate a deal that was in all parties' mutual interest. Sixth, and finally, we are also satisfied that a reasonable jury could find that Plaintiffs' injury was proximately caused—at least in part—by their reliance on the Julicher Defendants' representation. As such, Plaintiffs have plead a fraud claim with sufficient particularity. Thus, making all reasonable inferences in Plaintiffs' favor, we deny summary judgment on this count.

### i. COUNT VIII: Conversion

In Pennsylvania, "conversion is the deprivation or another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Fenton v. Balick*, 821 F. Supp. 2d 755, 760 (E.D. Pa. 2011) (internal quotations omitted). This Court has elaborated that, under this framework, conversion may occur in several ways:

> (1) acquiring possession of property with the intent to assert a right to it adverse to the owner; (2) transferring the property and therefore depriving the owner of control; (3) unreasonably withholding possession of the property from the one who has the right to it; and (4) misusing or seriously damaging the property in defiance of the owner's rights.

> *Id.* (citations omitted).

Furthermore, Pennsylvania recognizes claims for conversion of confidential information. *Pestco, Inc. v. Associated Prods.*, 2005 PA Super 276, P19. To establish a claim for conversion of confidential information, Plaintiffs must show that the Julicher Defendants "'for the purpose of advancing a rival business interest, procure[d] by improper means information about [Plaintiffs'] business' and that 'harm [was] caused by [Defendants'] possession, disclosure, or use of the information.'" *Id.* at *78 (quoting *Pestco,* 2005 PA Super 276, P19).

The Julicher Defendants argue that this Court must grant summary judgment as to Plaintiffs' conversion claim because Plaintiffs' "FAC only contains allegations of the alleged misuse [of] confidential information. There is no allegation that [either] Julicher Defendant deprived any Plaintiff or their chattels or money." (ECF Docket No. 273 at 15.) This fails to recognize the scope of conversion claims permitted under Pennsylvania law. *See PNC Mortg. V. Superior Mortg. Corp.*, No. 09-5084, 2012 U.S. Dist. LEXIS 25276, at *75-79 (E.D. Pa. Feb. 27, 2012) (denying summary judgment on a conversion of confidential information claim where

Defendants allegedly used Plaintiffs' customer lists and other information to solicit Plaintiffs' customers, prospects, and accounts and divert that business to Defendants); s*ee also Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp 3d 523, 538-39 (W.D. Pa. 2018) (denying Defendants' motion to dismiss a conversion claim because Plaintiff presented sufficient evidence that "the Everest Defendants used Liberty Mutual's proprietary information that it received via email from Gemma to compete against Liberty Mutual . . . such allegations are sufficient to allege that the Everest Defendants 'exercised wrongful control' over Liberty Mutual's property, which is required for a conversion claim.").

Plaintiffs have alleged that the Julicher Defendants acquired confidential and proprietary materials, which Plaintiffs allege to be their sole property, including a "30-page analysis of why Moon Nurseries owed LG $300,000 and the financial data on LGH, LG, and AWS." (ECF Docket No. 293 at 30; *see also* ECF Docket No. 43 at ¶¶ 121-126.) Moreover, Plaintiffs claim that the Julicher Defendants acquired used this proprietary information through improper means to advance a rival business interest, ultimately causing Plaintiffs to go out of business. (ECF Docket No. 43 at ¶ 124-25.) Defendants do not contest any of these facts in their Motion. (*See* ECF Docket No. 273.) Thus, construing the undisputed material facts in Plaintiffs' favor, we are satisfied that a reasonable jury could find the Julicher Defendants liable for conversion of confidential information and deny summary judgment on this count.

### j.   COUNT IX: Negligent Misrepresentation

To successfully levy a claim for negligent misrepresentation in Pennsylvania, Plaintiffs must show the following:

> (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or

falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

*Gibbs*, 647 A.2d at 890.

Such claims have much in common with fraud (also referred to as intentional misrepresentation in Pennsylvania). *Id.* Unlike fraud claims, however, claims for negligent misrepresentation need not show that the representor *knew* their words were untrue. *Id.* Rather, such claims merely must show that the representor "failed to make reasonable investigation of the truth of [their] words." *Id.* Because all other elements of this claim overlap, we incorporate by reference the discussion of Plaintiffs' fraud claims against the Julicher Defendants. *See supra* Part III.g.

The Julicher Defendants argue that Plaintiffs have not presented sufficient facts to maintain their claim. (ECF Docket No. 273 at 14.) As discussed above, we are satisfied that a reasonable jury could find in Plaintiffs' favor on a fraud claim. *See supra* Part III.g. Given the overlap in law and the Parties' arguments, we likewise deny summary judgment on this claim.

### k.  COUNT X: Tortious Interference with Contract

In their Motion, the Julicher Defendants claim that Plaintiffs have no factual support for their claim that the Julicher Defendants engaged in "purposeful action . . . specifically intended to harm or prevent the formation of a relationship between Plaintiffs and any third party." (ECF Docket No. 273 at 15-16.)

In their FAC, however, Plaintiffs claim that the Julicher Defendants intentionally interfered with both then-existing contracts and prospective contracts. (ECF Docket No. 43 at ¶¶ 121-26, 333-36.e.) Under Pennsylvania law, the elements of a cause of action for interference with contractual relationships, both existing and prospective, are as follows:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.
>
> *Crivelli v. GMC*, 215 F.3d 386, 394 (3d Cir. 2000) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997).

The Julicher Defendants do not contest the first, third, and fourth elements of this claim in their Motion. (*See* ECF Docket No. 273 at 16 ("Plaintiffs[] failed to establish facts that any purposeful action on the part of any Julicher Defendant specifically intended to harm or prevent the formation of a relationship between Plaintiffs and any third party.").)

The Julicher Defendants' argument here is disingenuous. Indeed, the core of Plaintiffs' claims against the Julicher Defendants is an allegation that they "[t]hreatened the companies and [Gaudioso] with . . . active efforts to cause financial ruin to both by forcing both out of business . . ." (ECF Docket No. 43 at ¶ 125.c.) Specifically, Plaintiffs have alleged the following purposeful actions intended to either harm an existing contractual relationship or prevent the formation of a new contract:

(1) Physical threats of violence intended to compel an unfavorable agreement with Moon Nurseries (ECF Docket No. 43 at ¶¶ 125.b, 125.k, 126.);

(2) Threats of financial ruin and forced bankruptcy (*Id.* at ¶¶ 125.c-d, 195.); and

(3) Misusing Plaintiffs' confidential information to coordinate with third parties seeking to drive Plaintiffs out of business (*Id.* at ¶¶ 124, 125.d.).

Notably, the Julicher Defendants do not challenge these factual allegations. (*See* ECF Docket No. 273 at 15-20.) Making all reasonable inferences in Plaintiffs' favor, we find these claims sufficient such that a reasonable jury could rule for Plaintiffs. We thus deny summary judgment on this claim.

**IV.     CONCLUSION**

For the foregoing reasons, we hereby deny Defendants Hank and Margit Julichers' Motion for Summary Judgment on all counts (ECF Docket No. 273.)  An appropriate Order follows.