**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAUREL GARDENS, LLC, *et al.*, | |
| *Plaintiffs*, | |
| v. | CIVIL ACTION<br>NO. 5:17-cv-00570-JLS |
| TIMOTHY MCKENNA, *et al.*, | |
| *Defendants*. | |

<u>**MEMORANDUM OPINION**</u>

**SCHMEHL, J.** */s/ JLS*                                             **MARCH  30, 2026**

When a defendant infiltrates an enterprise through a pattern of racketeering activity, acquires control of that enterprise, and then uses that control to injure the enterprise, that enterprise may have a colorable claim under 18 U.S.C. § 1962(b).  But not every pattern of racketeering creates control, and not every exercise of control produces injury.  *See Metcalf v. PaineWebber Inc.*, 886 F. Supp. 503, 509-10 (W.D. Pa. 1995), *aff'd*, 79 F.3d 1138 (3d Cir. 1996); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993).

The dispute now before the Court turns on this distinction.  Plaintiffs contend that the Isken Defendants unlawfully gained "control" of their enterprise by leveraging a managerial employee's personal debt so as to pressure that employee to divert the enterprise's materials and labor to the Isken Defendants in violation of § 1962(b).  But the record does not match the theory.  Plaintiffs identify no evidence from which a reasonable factfinder could conclude that the Isken Defendants acquired or maintained control of their enterprise.  And even if Plaintiffs could, the record contains no evidence that the Isken Defendants exercised that control to cause injury to Plaintiffs'

enterprise. The Isken Defendants are therefore entitled to summary judgment on the § 1962(b) claim and, for a similar evidentiary deficiency, the § 1962(d) conspiracy claim.

I

The remaining claims in this civil action invoke this Court's federal-question jurisdiction through §§ 1962(b) and (d) of the Racketeer Influenced and Corrupt Organizations Act. The case has a long history. Segue to 2012. In that year, Plaintiff Charles Gaudioso decided to enter the snow-removal and landscaping business. *See* Pls.' Br. in Resp. to the Isken & Julicher Defs.' Third Mots. for Summ. J. at 8-9, ECF No. 518-1.[1] So Mr. Gaudioso formed Laurel Gardens Holdings, LLC to acquire several entities in the field, including Laurel Gardens, LLC, American Winter Services, LLC, and LGSM, GP. *Id.* Those entities, together with Gaudioso, are the Plaintiffs here.

To help manage the enterprise, Gaudioso ultimately hired Defendant Timothy McKenna. *See id.* at 2. Mr. McKenna had substantial prior experience in the snow-removal business and maintained longstanding relationships with various customers in the market. *See* App. in Supp. of Isken Defs.' Renewed Mot. for Summ. J. at 10-19, ECF No. 441-3. One such relationship was with brothers Paul and Donald Isken and their company, Isken Enterprises, LLC (collectively, the "Iskens"). *See id.*

The Iskens owned and operated hotels. *See* Pls.' Br. in Resp. to the Isken & Julicher Defs.' Third Mots. for Summ. J. at 26, ECF No. 518-1. In the wintertime, those Delaware-centric hotels needed snow-removal services. Beginning in the early 2000s, McKenna—through his former company "McKenna American"—would provide snow-removal services to the Isken hotels. *See* App. in Supp. of Isken Defs.' Renewed Mot. for Summ. J. at 14-19, ECF No. 441-3. Eventually

---

[1]    Throughout this Opinion, the Court cites to document and page numbers as designated by the CM/ECF-generated headers.

McKenna and the Iskens settled on what they describe as a "rooms-for-salt" deal.  That is, when severe snowstorms hit and McKenna's snowplow drivers worked long hours, the drivers needed a place to rest between shifts.  *See* D. Isken Aff. at 4, ECF No. 518-35.  The hotels, which were located near major roads, provided convenient lodging.  *See id.*  So in exchange for allowing McKenna's drivers to stay in guest rooms without charge, McKenna provided the hotels with discounted snow-removal services and ice-melting "salt."  *See id.*

At some point McKenna American ceased operations.  This ultimately led to Mr. McKenna's employment with Gaudioso.  *See* Pls.' Br. in Resp. to the Isken & Julicher Defs.' Third Mots. for Summ. J. at 10-11, ECF No. 518-1.  Despite the company's closure though, Mr. McKenna maintained the "rooms-for-salt" arrangement with the Iskens.  *See id.* at 20-21.  During the winter of 2014, for example, the record indicates that McKenna used the labor and materials of Gaudioso's enterprise to satisfy his end of the rooms-for-salt bargain.  *See id.*

More specifically, during that winter the Iskens contacted McKenna and negotiated a price of $12.50 to $13.50 per bag of salt in exchange for lodging American Winter Services' snowplow drivers.  *See* D. Isken Aff. at 4, ECF No. 518-35.  Pursuant to the deal, AWS ultimately delivered salt to a Homewood Suites hotel associated with the Iskens.  *See* Pls.' Br. in Resp. to the Isken & Julicher Defs.' Third Mots. for Summ. J. at 20-21, ECF No. 518-1.  Around the same time, AWS also plowed Donald Isken's personal driveway on two occasions without charge.  *See id.* at 20. When asked at his deposition to explain why, Mr. McKenna testified:

> Because he was unable to get out of his driveway and he was for all intents and purposes somebody we wanted to have as a potential customer.

*See* App. in Supp. of Isken Defs.' Renewed Mot. for Summ. J. at 47, ECF No. 441-3.

From Gaudioso's perspective, Mr. Gaudioso states that he authorized neither the discounted salt deliveries nor the snowplowing services performed at the Isken properties.  *See*

Pls.' Br. in Resp. to the Isken & Julicher Defs.' Third Mots. for Summ. J. at 21, ECF No. 518-1. Gaudioso further states that upon discovering that AWS had delivered salt to the Iskens and plowed Donald Isken's personal driveway, he directed that an invoice be issued to the Iskens at a rate of $20 per bag, totaling $12,874.00, and that a separate invoice in the amount of $1,442.14 be issued for the driveway services. *See id.* at 20.   When the invoices went unpaid, Gaudioso later spoke by telephone with Paul Isken, who stated that he already had an agreement with McKenna and would not pay more. *See id.* at 39.

From this episode, Gaudioso now speculates that McKenna acted as he did because he was in substantial personal debt to the Iskens and that the Iskens directed him to do so. *See id.* at 18, 33.   In support of this theory, Plaintiffs note that the Iskens made a series of personal loans to McKenna and his wife from the mid-2000s through 2013, and they cite to dozens of emails from around the same time period in which the Iskens repeatedly sought payment of overdue amounts on the loans. *See id.*  at 35-36, 38.

II

Against this backdrop, the Court turns to the sufficiency of the record under Rule 56, which permits entry of summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Before analyzing the remaining counts, the Court observes that the moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once that initial showing is made, the burden then shifts to the non-moving party to go beyond the pleadings and come forward with specific, material facts that present "a genuine issue

4

for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations omitted). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and it is "material" only if it might affect the outcome under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In conducting this analysis, the Court must review the record as a whole and draw all reasonable inferences in favor of the non-movant. *Hugh v. Butler Cnty Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (internal citations omitted).

III

As to the § 1962(b) claim, the Isken Defendants advance several arguments challenging the sufficiency of the record under Rule 56. Most persuasively, the Isken Defendants contend that the record contains no evidence from which a reasonable factfinder could conclude either that they acquired or maintained control of Plaintiffs' enterprise, or that any such control was used to injure the enterprise.[2] The Court agrees.

Section 1962(b) targets the infiltration of an enterprise through the acquisition or maintenance of an interest in, or control of, that enterprise. It provides:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which, affect, interstate or foreign commerce.

---

[2]    Relatedly, this case returns on remand from the Court of Appeals for the Third Circuit, which tasked this Court with the following:

> On remand, the Court must consider whether the Julichers and the Iskens obtained or maintained "interest or control" in Laurel Gardens "through a pattern of racketeering activity[.]" § 1962(b). There may well not have been an acquisition or an acquisition injury, nor racketeering activities and an intent to aid and abet them.

*Laurel Gardens LLC v. McKenna*, No. 23-2649, 2024 WL 3220401, at *3 (3d Cir. June 28, 2024).

As is often noted, neither "interest" nor "control" is defined in the statute.  The Court of Appeals for the Third Circuit has explained that an "interest" means a "right, claim, title or legal share in something . . . including profits or proceeds."  *Laurel Gardens LLC v. McKenna*, No. 23-2649, 2024 WL 3220401, at *3 (3d Cir. June 28, 2024) (cleaned up and internal citations omitted).  The Court also defines "control" of an enterprise as "the power to manage, direct, or govern the enterprise."  *Id.* (citations omitted); *see also Kaiser v. Stewart*, No. CIV. A. 96-6643, 1997 WL 476455, at *2 (E.D. Pa. Aug. 19, 1997) ("It signifies the kind of power that an owner of 51% or more of an entity would normally enjoy."); *Moffatt Enters., Inc. v. Borden, Inc.*, 763 F. Supp. 143, 147-48 (W.D. Pa. 1990) ("[T]he 'control' contemplated [in § 1962(b)] is in the nature of the control one gains through the acquisition of sufficient stock to . . . elect one or more [of an enterprise's] directors.").

Today, Plaintiffs identify nothing in the record from which a reasonable factfinder could conclude that the Isken Defendants acquired or maintained any interest in, or control of, Plaintiffs' enterprise within the meaning of 18 U.S.C. § 1962(b).  The record contains no evidence that the Isken Defendants possessed any corporate voting power, ownership rights, or any other legal interest in Plaintiffs' enterprise.  Nor does the record contain any evidence that the Iskens exercised any independent decision-making authority over the enterprise's affairs.  The mere sale of approximately $14,000 worth of salt at a 32.5 to 37.5 percent discount does not serve as sufficient evidence of control over Plaintiffs' enterprise when Mr. Gaudioso himself testified that his enterprise generated roughly $6,000,000 in annual revenue.  *See* App. in Supp. of Isken Defs.' Renewed Mot. for Summ. J. at 330, ECF No. 441-3.

Furthermore, even if the Court were to assume that such evidence was enough to establish control, there is no evidence that the Isken Defendants ever directly or indirectly wielded that

control to cause injury.  This point is critical because the Third Circuit requires an "acquisition injury."  That is, a plaintiff must show sufficient evidence of an injury caused by the defendant's acquisition or maintenance of an interest in or control of the enterprise itself, and not merely injury resulting from predicate racketeering acts.  *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190-91 (3d Cir. 1993).

Here, Plaintiffs point to no evidence that the Isken Defendants ever dictated pricing or discounts, determined customer priorities, overrode management decisions, coordinated broader enterprise operations, or otherwise used the debt against McKenna as leverage to obtain favorable treatment.  Despite the scores of emails marked as exhibits, not a single message evidences any such conduct.  And no deposition testimony from the Iskens, McKenna, Gaudioso, or anyone else for that matter indicates that the Isken Defendants ever issued such directions, explicitly or implicitly.  At most, the record suggests that McKenna continued with his rooms-for-salt arrangement and in so doing potentially misused his authority.  That is not evidence of an "acquisition injury."  Consequently, Plaintiffs' § 1962(b) claim fails.

For similar reasons, Plaintiffs' claim under 18 U.S.C. § 1962(d) against the Isken Defendants cannot survive summary judgment.  A RICO conspiracy requires proof that the defendant knowingly agreed to facilitate the commission of a substantive RICO violation.  *See Salinas v. United States*, 522 U.S. 52, 63-65 (1997) (citing *Pinkerton v. United States*, 328 U.S. 640, 646 (1946)); *United States v. Savage*, 85 F.4th 102, 136 (3d Cir. 2023) ("RICO conspiracy charge requires only proof of an agreement to assist the RICO enterprise in its criminal objectives."); *United States v. Fattah*, 914 F.3d 112, 162 (3d Cir. 2019); *see also Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 366-67 (3d Cir. 2010) (requiring Plaintiffs to

7

sufficiently demonstrate furtherance of a substantive RICO violation to avoid automatic termination of a RICO conspiracy claim).

The only evidence that Plaintiffs currently offer of a substantive RICO violation relates to the still-pending § 1962(b) claim asserted against the Julicher Defendants.[3]  The theory of that substantive RICO claim is that the Julicher Defendants engaged in a pattern of racketeering activity to acquire control of Plaintiffs' enterprise and siphon off its assets.  Taken altogether, to establish RICO conspiracy liability against the Isken Defendants, Plaintiffs must present evidence that the Iskens knowingly agreed to advance that objective, namely, the Julichers' acquisition of control of the victim enterprise.  *See also United States v. Dougherty*, 98 F. Supp. 3d 721, 745 (E.D. Pa. 2015).  Plaintiffs fail to do so.

Indeed, Plaintiffs' counsel acknowledged that although the Iskens and Julichers each allegedly interacted with the McKenna Defendants, "the Iskens and Julichers did not act in conspiracy with each other."  App. in Supp. of Isken Defs.' Mot. for Summ. J. at 1302, ECF No. 441-3.  And Plaintiffs identify no evidence that the Isken Defendants, whether directly or through McKenna or any other person, agreed to facilitate any infiltration or control of Plaintiffs' enterprise by the Julicher Defendants, *i.e.*, the object of the conspiracy.  Accordingly, judgment will be entered in favor of the Isken Defendants on the final federal count.  And because only state-law claims remain against the Isken Defendants, and since those claims are not sufficiently related to

---

[3]    The claims against the Julicher Defendants were detailed in this Court's prior opinion. *See generally Laurel Gardens LLC v. McKenna*, No. CV 17-570, 2023 WL 5153512, at *3-5 (E.D. Pa. Aug. 10, 2023), *vacated and remanded*, No. 23-2649, 2024 WL 3220401 (3d Cir. June 28, 2024). Presently, the Julicher Defendants have also moved for summary judgment, but their filing merely "joins" the Isken Defendants' motion.  Since the Iskens' motion only advances arguments specific to the Isken Defendants, the Julicher Defendants' paper joinder provides no independent basis for relief and is therefore without merit.

the remaining claims against the Julicher Defendants, the Court lacks supplemental jurisdiction over them.[4]  *See* 28 U.S.C. § 1367(a).

IV

For the foregoing reasons, the Court grants the Isken Defendants' motion for summary judgment as to Plaintiffs' claims under 18 U.S.C. §§ 1962(b) and (d).  The Court declines to exercise supplemental jurisdiction over the remaining state-law claims, which will be dismissed without prejudice.  An appropriate Order follows.

---

[4]    There is an insufficient factual nexus between the claims against the Julichers and the state-law claims against the Iskens to establish a common nucleus of operative facts.  *See generally Lyon v. Whisman*, 45 F.3d 758, 760-63 (3d Cir. 1995).  The claims against the Julichers concern loans extended to Plaintiffs and McKenna, as well as various threats allegedly made by Hank Julicher. Those allegations do not factually relate to the salt and snowplowing claims asserted against the Iskens.  As previously mentioned, the disconnect is underscored by Plaintiffs' concession that "the Iskens and Julichers did not act in conspiracy with each other."  App. in Supp. of Isken Defs.' Mot. for Summ. J. at 1302, ECF No. 441-3.